**Lee A. RAND, Plaintiff–Appellant,**

v.

**James ROWLAND; Nadim Khoury, M.D.; William Bunnell; Roy Lee Johnson; Leo R. Estes, Defendants–Appellees.**

No. 95–15428.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 12, 1997.

Decided June 3, 1997.

Amy E. Margolin, Jackson, Tufts, Cole & Black, San Jose, CA, for plaintiff-appellant.

D. Kenneth Baumgarten, Deputy Attorney General, Sacramento, CA, for defendants-appellees.

Before: SCHROEDER and O'SCANNLAIN, Circuit Judges, and KELLEHER,* District Judge.

Opinion by Judge Kelleher; Concurrence by Judge O'Scannlain.

## OPINION

KELLEHER, District Judge.

On April 20, 1989, Lee A. Rand ("Appellant"), a state prison inmate, filed a civil rights action pursuant to 42 U.S.C. § 1983,

---

* The Honorable Robert J. Kelleher, United States District Judge for the Central District of California, sitting by designation.

against several prison officials-most of them medical officers (the "Defendants" or "Appellees"). Appellant's complaint is based on his temporary placement and treatment in the infirmary of the California Correctional Institution at Tehachapi ("CCI"), where, after testing positive for the human immunodeficiency virus (the "HIV"), he resided for six months pending transfer to a true medical facility. On September 30, 1993, and January 17, 1995, by way of two separate orders, the district court granted Defendants' motion for summary judgment. Because the district court did not comply with the "pro se prisoner" requirements of Federal Rule of Civil Procedure 56, the orders granting Defendants' motion for summary judgment are vacated and the case remanded for further proceedings consistent with this Court's opinion. The orders are affirmed only insofar as they represent the determination by the district court not to appoint counsel.

## I.

On April 20, 1989, Appellant filed a civil rights complaint in which he stated that he was confined to the prison infirmary at CCI for six months in 1988 and 1989, after he tested positive for the HIV. Appellant was "temporarily" placed in the infirmary pending his transfer to the California Medical Facility in Vacaville ("CMF"), which was better able to care for inmates carrying the HIV. Appellant claims his Eighth Amendment constitutional rights were violated during that six month period at CCI, when he was allegedly denied access to exercise, proper medical care, clothing and heating, and personal hygiene items. Further claims were asserted under the First Amendment (right to telephone, right to free exercise of religion) and the Fourteenth Amendment (due process, equal protection). After filing his complaint, Appellant filed two motions for the appointment of counsel; both were, in effect, denied.

The magistrate court reviewing this matter offered its first Findings and Recommendations on July 27, 1993. On September 30, 1993, the district court issued an order (the "1993 Order") adopting only certain recommendations from this report, one being the grant of summary judgment in favor of James Rowland (the former Director of the California Department of Corrections), on the grounds that he had been sued only in his supervisorial capacity. At the heart of the 1993 Order was a finding that Defendants had not adequately briefed the issues concerning the merits of five of Rand's claims until they filed their Objections to the Magistrate's Findings and Recommendations. For that reason, the district court declined to adopt the magistrate's findings, and, in effect, referred the matter back to the magistrate court for further findings and recommendations concerning the remaining claims.

On November 10, 1994, the magistrate court issued its second Findings and Recommendations, recommending that Defendants' motion be denied on the issue of qualified immunity, that Appellant's claims for injunctive and declaratory relief be dismissed as moot, and that Appellant's claims concerning medical care, heating and clothing, out-of-cell exercise, access to clergy, and access to the law library be dismissed because Appellant did not suffer any constitutional deprivations. On January 17, 1995, the district court entered an order (the "1995 Order") adopting these second Findings and Recommendations and dismissing the action in its entirety. Judgment was entered on January 17, 1994. The Appellant then appealed from the denials of counsel, the 1993 Order, and the 1995 Order.

## II.

Appellant offers many challenges to the district court's 1993 and 1995 Orders. Because we find that the Orders must be vacated and the matter remanded based on the failure of the district court to provide proper notice, those challenges will not be discussed. We do, however, examine the district court's decision not to appoint counsel and discuss this issue below.

### A. *Pro Se Prisoner Litigants and Summary Judgment Notice*

It cannot be disputed that the district court itself, not the moving party, must

provide to a pro se prisoner litigant both notice and explanation as to what a Rule 56 motion is and what the litigant's responsibilities are thereunder. *Arreola v. Mangaong,* 65 F.3d 801, 802 (9th Cir.1995) (per curiam) (holding that pro se prisoner litigant was entitled to notification of requirements of summary judgment rule by trial court). In *Arreola,* we wrote, "[a]lthough [the moving party] argues that adequate notice was provided to [the pro se litigant] by the citation in [the moving party]'s notice of motion to *Klingele* and Rule 56, *Klingele* requires that the notice be provided *by the district court.*" *Id.* (emphasis added) (citing *Klingele v. Eikenberry,* 849 F.2d 409, 411–12 (9th Cir.1988)). On the facts of the case before us, however, such notice was not provided by the court and, instead, was presented to the Appellant by the Defendants, in Defendants' notice of motion and motion for summary judgment.[1] This is insufficient.

While addressing a district court's conversion of a motion to dismiss into a summary judgment motion, we have recently held that notice requirements as to pro se prisoners are extremely strict. *Anderson v. Angelone,* 86 F.3d 932, 935 (9th Cir.1996) (citing *Klingele,* 849 F.2d at 411–12) (noting that "[t]he District courts are obligated to advise prisoner pro per litigants of Rule 56 requirements"). In *Anderson* we went on to state that the "*district court* in this case gave no such advice." *Id.* (emphasis added). On the facts at hand, though Appellant arguably received notice, it was provided neither by the district court nor by the magistrate court. The notice having not been provided by the correct entity, Appellees nevertheless attempt to argue that the explanation provided

in their notice of motion for summary judgment was sufficient because (1) it substantively discusses the rule, and (2) Appellants' actions and filings evidence at least a moderate understanding of the summary judgment process. However, we have previously held that actual knowledge or any level of sophistication in legal matters does not obviate the need for judicial explanation. In *Klingele,* we "decline[d] appellees' invitation to erode the [notice] rule by allowing district courts to avoid giving the required advice based on a determination that a prisoner has the requisite sophistication in legal matters," and noted that "*[d]istrict courts* are obligated to advise prisoner pro per litigants of Rule 56 requirements." 849 F.2d at 411–12. We affirm that holding and vacate the district's order granting summary judgment.[2]

In so finding, we note, as has the Seventh Circuit, that "we are naturally reluctant to impose additional duties on our overburdened district courts." *Lewis v. Faulkner,* 689 F.2d 100, 102 (7th Cir.1982). Yet this burden, as upheld today, is, in reality, carried by defendants in prisoner civil rights cases, rather than resting on district judges' shoulders. *See id.* As the Seventh Circuit aptly stated when discussing its similar, though not identical, notice rule, "[m]ost defendants in prisoners' rights cases in this circuit are represented by one of the[ ] state attorneys general in the circuit, who we are sure will cooperate in implementing the new rule with minimum inconvenience to our harassed district judges." *Id.* at 103. In the Ninth Circuit, the notice rule is expressly limited to pro se prisoners. *Jacobsen v. Filler, et al.,* 790 F.2d 1362, 1364–67 (9th Cir.1985). Thus, as a practical matter, it is the duty of the

---

1. The notice provided by Appellees was appended to their notice for summary judgment and included reference to the need to present counter-affidavits, depositions, and answers to interrogatories. Appellees' Supplemental Answering Brief, at 13–14. The notice, however, does not explicitly state that the failure to present such counter-evidence *will* result in the entry of summary judgment. The notice also does not state that a grant of summary judgment means the case is over, nor does the notice explain that uncontroverted facts will be taken as true.

2. We note that the defendants' arguments as to the quality of the notice provided to the plaintiff

by way of the defendants' own notice of motion for summary judgement are without merit. Though other circuits examine whether the failure on the part of the court (or the moving party, as some circuit's require) to provide notice causes prejudice to the non-moving pro se prisoner, *see, e.g., Sellers v. Henman,* 41 F.3d 1100, 1101–03 (7th Cir.1994), such is not the rule in the Ninth Circuit. Rather, as a means to guarantee the proper scope of the notice, we require that the notice, though possibly drafted and proposed by the defendant, be provided by the district court.

state and related parties in this type of litigation to provide to the district court proposed notices that properly and succinctly convey the information mandated below.

## B. Substance of Notice

■ A related issue on appeal is the form and substance that such court-issued notice must take. We have recently held, and there can be no dispute, that the district court's heightened duties as to pro se prisoners encompass an obligation "to advise prisoner pro per litigants of Rule 56 requirements." *Anderson*, 86 F.3d at 934 (citing *Klingele*, 849 F.2d at 411–12). The *Anderson* court went on to state that "[t]his requires the district court to tell the prisoner about his 'right to file counter-affidavits or other responsive materials and [to] alert[ ][him] to the fact that his failure to so respond might result in the entry of summary judgment against him.'" *Id.* (quoting *Jacobsen*, 790 F.2d at 1365 n. 8, and citing *Klingele*, 849 F.2d at 411). Beyond this language, we are yet to provide more detailed instruction as to what the requisite notice must contain. With the goal of delineating the general boundaries of what constitutes acceptable notice, we now examine approaches employed in other circuits.

■ As a preliminary matter, we are in agreement with other jurisdictions that clear, understandable language must be used in the notice provided. *See, e.g., Moore v. State of Fla.*, 703 F.2d 516, 521 (11th Cir.1983) (noting that the "notice must be sufficiently clear to be understood by a pro se litigant and calculated to apprise him of what is required under Rule 56") (quoting *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir.1979)); *see also Ham v. Smith*, 653 F.2d 628, 630 (D.C.Cir.1981). Beyond this, though the particular wording may vary, the respective circuits that recognize some form of notice requirement are in concert with our holding in *Anderson*, generally to the effect that the pro se party "must be advised of his right to file countering affidavits or other responsive material and that he be alerted to the fact that his failure to so respond might result in the entry of summary judgment against him." *Davis*, 600 F.2d at 460; *see also*

*Brown v. Shinbaum*, 828 F.2d 707, 708 (11th Cir.1987); *Griffith v. Wainwright, et al.*, 772 F.2d 822, 825 (11th Cir.1985); *Lewis*, 689 F.2d at 102.

In other circuits, further defining of the requisite notice is not uncommon. The *Shinbaum* court, for example, went on to require that the "consequences of default" be further defined as "the fact that final judgment may be entered without a full trial, and the fact that the defendants' evidence might be taken as the truth if not contradicted by [ ] affidavits." 828 F.2d at 708. With a similar goal of clarity, the Seventh Circuit has held that the notice must include "both the text of Rule 56(e) and a short and plain statement in ordinary English that any factual assertion in the movant's affidavits will be taken as true by the district court unless the non-movant contradicts the movant with counter-affidavits or other documentary evidence." *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir.), *cert. denied*, 504 U.S. 957, 112 S.Ct. 2307, 119 L.Ed.2d 228 (1992).

■ In line with holdings in other jurisdictions, as well as Ninth Circuit precedent, we now clarify the requirements for pro se prisoner summary judgment notice. First, the notice must be, in large measure, phrased in understandable language aimed at apprising the prisoner of his rights and obligations under Rule 56. Though use of legal terms is certainly necessary in any discussion of a Rule 56 motion, these terms must, to the extent possible, be complemented by explanations of the requirements and the effects of a Rule 56 motion in a manner that the layman can comprehend. Second, we reaffirm our recent holdings in *Anderson, Klingele*, and *Jacobsen*, requiring that the district court inform the pro se litigant as to his or her right to file counter-affidavits or other responsive materials and alert him or her to the fact that the failure to so respond might result in the entry of summary judgment against him or her. Third, because the effect of losing on summary judgment must be clear, the district court must note that should the pro se prisoner fail to contradict the moving party with counter-affidavits or other evidence, the moving parties' evidence might

be taken as the truth, and final judgment may be entered without a full trial.

## C. Appointment of Counsel

 Appellant filed two motions for the appointment of counsel, both were denied. Appellant now appeals these denials. The denial of a motion for appointment of counsel under 28 U.S.C. § 1915 is reviewed for abuse of discretion. *Wilborn v. Escalderon,* 789 F.2d 1328, 1331 (9th Cir.1986). There is no constitutional right to appointed counsel in a § 1983 action. *Storseth v. Spellman,* 654 F.2d 1349, 1353 (9th Cir.1981). However, in "exceptional circumstances," a district court may appoint counsel for indigent civil litigants pursuant to 28 U.S.C. § 1915(d). *Aldabe v. Aldabe,* 616 F.2d 1089, 1093 (9th Cir.1980). To decide whether these exceptional circumstances exist, a district court must evaluate both " 'the likelihood of success on the merits [and] the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved.' " *Wilborn,* 789 F.2d at 1331 (quoting *Weygandt v. Look,* 718 F.2d 952, 954 (9th Cir.1983)).

First, in his motions for the appointment of counsel, Appellant offered no argument to the effect that he had any requisite likelihood of success. As to the second portion of the test, the district court judge is to have applied the indigent's ability to articulate his claims against the relative complexity of the matter. Appellant's pursuit of discovery with interrogatories and document requests was comprehensive and focused. Appellant filed numerous motions throughout this action. Though they did not achieve the quality of papers that might have been prepared by a lawyer, Appellant's papers were generally articulate and organized. On appeal, Appellant notes that had he had the assistance of counsel during the early stages of the proceedings, he may well have fared better-particularly in the realms of discovery and the securing of expert testimony-but this is not the test. As was implied in *Wilborn,* any pro se litigant certainly would be better served with the assistance of counsel. *Id.* Beyond this, however, Appellant must show that because of the complexity of the claims

he was unable to articulate his positions. Appellant has not made this showing. The district court did not abuse its discretion in denying the requests for the appointment of counsel.

## III.

Due to the district court's failure to notify the pro se prisoner litigant of his rights and responsibilities in responding to a Rule 56 motion, we vacate the 1993 and 1995 Orders, subject to the caveat immediately below, and remand the case for further proceedings consistent with this Court's opinion. Accordingly, Appellant's substantive challenges to the district court's determinations on summary judgment are not yet ripe for review. As to the Appellant's request for the appointment of counsel, the district court's determination was certainly within its discretion. Only insofar as the 1993 and 1995 Orders represent a determination on the part of the district court not to appoint counsel, they are affirmed.

VACATED and REMANDED in part, AFFIRMED in part.

O'SCANNLAIN, Circuit Judge, specially concurring.

I concur because *Klingele* indeed dictates that we vacate summary judgment and reinstate Rand's claims since the district court failed to provide him with the required notice. I write separately to point up how-after nearly nine years in application-the formal requirements of the *Klingele* rule continue to subsume any purported justification for its creation.

In *Klingele v. Eikenberry,* 849 F.2d 409 (9th Cir.1988), we created a "bright-line" rule that district courts "are obligated to advise prisoner pro per litigants of Rule 56 requirements" before entering summary judgment against them. *Id.* at 411–12. This obligation is found nowhere in the text of Rule 56. Rather, *Klingele* rests on the rationale of *Hudson v. Hardy,* 412 F.2d 1091 (D.C.Cir. 1968), the seminal "fair notice" case. *Hudson* devised from scratch the rule that district courts should provide *pro se* prisoners with "fair notice of the requirements of the

summary judgment rule" before summary judgment can be entered. *Id.* at 1094. Good idea or not, *Hudson* lacks any foundation in the text of Rule 56 and, to its credit, barely pretends to. *Hudson* simply proclaimed "that the requirements of the summary judgment rule may not be fairly applied 'with strict literalness' to a prisoner unrepresented by counsel and subject to the 'handicaps detention necessarily imposes upon a litigant.'" *Id.* (citation omitted).

We first acknowledged *Hudson* in *Jacobsen v. Filler,* 790 F.2d 1362 (9th Cir.1986), where we acquiesced in a footnote that its notice requirement applied to imprisoned *pro se* litigants. In refusing, however, to extend the notice requirement to all *pro se* litigants, we explained that

> even if a substantive notice requirement were desirable, it should be enacted through formal amendment rather than piecemeal adjudication. Rule 56's separate notice provision and description of summary judgment indicate that the Supreme Court and its Advisory Committee have considered the special problems raised by the summary judgment procedure and, by failing to require specific notice of the nature of summary judgment, have concluded that the present federal rules already apprise litigants of their summary judgment obligations. Requiring additional notice to *pro se* litigants would be an accretion onto Rule 56(c), not an interpretation of it; and as an ad hoc amendment it would not be standardized, codified, or subject to collective decision making.

*Id.* at 1366 (internal parentheticals and citation omitted). I, for one, fail to see why it is improper for us to amend Rule 56 with respect to all *pro se* litigants but perfectly acceptable to amend it with respect to imprisoned *pro se* litigants.

Even if it were proper for us to accrete our desires onto Rule 56 in certain circumstances, *Jacobsen* further explains why "fair notice" rules may not necessarily be "desirable":

> Imposing an obligation to give notice of Rule 56's evidentiary standards would also invite an undesirable, open-ended participation by the court in the summary judgment process. It is not sensible for the court to tell laymen that they must file an "affidavit" without at the same time explaining what an affidavit is; that, in turn impels a rudimentary outline of the rules of evidence. Unlike the conversion of a 12(b)(6) motion into a motion for summary judgment, which only requires notice of what the motion now *is,* Jacobsen's proposal requires advice as to what the motion must *mean.* To give that advice would entail the district court's becoming a player in the adversary process rather than remaining its referee.

*Id.* at 1365–66 (internal footnotes omitted). Why, with respect to prisoners, does the notice obligation not invite the same "undesirable, open-ended participation by the court in the summary judgment process" as it does with respect to any other *pro se* litigant? I am inclined to agree with the Fifth Circuit that "[t]he notice afforded by the Rules of Civil Procedure and the local rules are ... sufficient. To adopt any other rule would make it impossible to determine precisely what notice was adequate in a given case." *Martin v. Harrison County Jail,* 975 F.2d 192, 193 (5th Cir.1992).

Admittedly, only one other circuit has expressly disavowed the *Hudson* rule.[1] In six other circuits, including ours, some form of *Hudson* notice must precede the entry of summary judgment against an imprisoned *pro se* litigant.[2] No circuit but ours, howev-

---

1. *Williams v. Browman,* 981 F.2d 901, 903 (6th Cir.1992) (noting that "[t]here is no authority in this Circuit for the proposition that a district court must advise a *pro se* prisoner of his right to file counter-affidavits or other responsive material or that he must be alerted to the fact that his failure to so respond with such material might result in entry of summary judgment against him").

2. *See Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996) (holding that "summary judgment should not be entered by default against a *pro se* plaintiff who has not been given any notice that failure to response will be deemed a default"); *Timms v. Frank,* 953 F.2d 281, 283 (7th Cir.) (holding that *pro se* prisoner "is entitled to receive notice of the consequences of failing to respond with affidavits to a motion for summary judgment"), *cert. denied,* 504 U.S. 957, 112 S.Ct.

er, has so elevated form over substance as to mandate the absurd and wasteful rule we must apply today.

As we place Rand's eight-year-old case back on the district court's docket, we should keep in mind, first, that Rand did have actual notice of what Rule 56 requires. Defendants, in their notice of motion, provided Rand with a two-page explanation of Rule 56 and its requirements. Of course *Klingele* requires that the district court itself advise the plaintiff of what Rule 56 requires.[3] Notice by the moving party is insufficient. Nothing in *Klingele*, however, explains why this should be so. The Second Circuit requires only "an easily comprehensible notice from the party moving for summary judgment." *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996). The same applies in the Seventh and District of Columbia Circuits, where the district court must provide notice only if the defendants fail to do so. *See Kincaid v. Vail,* 969 F.2d 594, 599 (7th Cir.1992), *cert. denied,* 506 U.S. 1062, 113 S.Ct. 1002, 122 L.Ed.2d 152 (1993); *Neal v. Kelly,* 963 F.2d 453, 457 (D.C.Cir. 1992).

Our opinion professes that, like the Seventh Circuit, "[w]e are naturally reluctant to impose additional duties on our overburdened district courts." *Lewis v. Faulkner,* 689 F.2d 100, 102 (7th Cir.1982). The least we could do, then, is to adopt the very next sentence that the Seventh Circuit uttered: "But we trust that counsel for defendants in prisoner civil rights cases in this circuit will lift this new burden from the judges' shoulders, by henceforth including in any motion for summary judgment" the requisite notice. *Id.* Our circuit not only fails to encourage defendants to carry the burden, we forbid them to.

We also should keep in mind that, apart from the notice that Rand received from defendants, Rand actually responded to the summary judgment motion. Unsophisticated litigant that he was, Rand filed the following motion to extend the time to respond upon receipt of defendants' motion:

> Plaintiff is a state prisoner proceeding pro se with this 42 U.S.C. § 1983 civil rights action. Defendants caused to be served upon the Plaintiff their MOTION FOR SUMMARY JUDGMENT on February 26, 1993. Pursuant to Local Rule 230(m) Plaintiff must respond to this pretrial motion within Twenty-one (21) days of service.
>
> Plaintiff requests he be granted an extension of time to and including March 26, 1993.

On March 26, 1993, Rand timely filed his opposition to the summary judgment motion with declarations, responses to discovery requests, and other exhibits.

Neither Rand's demonstrated awareness that he had to respond nor his actual response matters under *Klingele*, however, for we have refused "to erode the *Hudson* rule by allowing district courts to avoid giving the requisite advice based on a determination that a prisoner has the requisite sophistication in legal matters." *Klingele,* 849 F.2d at 411. Thus, we must vacate summary judgment, which Rand opposed with affidavits and other responsive material, because the district court did not notify Rand that he could submit affidavits and other responsive materials. Maybe we should rethink this.

The Seventh Circuit, for instance, does not reverse for failure to provide notice "unless there is reason to believe that the plaintiff was prejudiced by the failure, that is, that he could have established that there was a genu-

2307, 119 L.Ed.2d 228 (1992); *Griffith v. Wainwright,* 772 F.2d 822, 825 (11th Cir.1985) (holding that "adverse party must be given express, ten-day notice of the summary judgment rules"); *Roseboro v. Garrison,* 528 F.2d 309, 310 (4th Cir.1975) (requiring "that the plaintiff be advised of his right to file counter-affidavits or other responsive material and alerted to the fact that his failure to so respond might result in the entry of summary judgment against him"); *Hudson,* 412 F.2d at 1094 (D.C.Cir.1968) (holding that "before entering summary judgment ... the Dis-

trict Court ... should have provided him with fair notice of the requirements of the summary judgment rule").

**3.** *See Arreola v. Mangaong,* 65 F.3d 801, 802 (9th Cir.1995) (explaining that "[a]lthough ... adequate notice was provided to Arreola by the citation in Dr. Mangaong's notice of motion to *Klingele* and Rule 56, *Klingele* requires that the notice be provided by the district court").

ine issue of material fact, precluding the grant of summary judgment, if he had had a reasonable opportunity to submit affidavits." *Sellers v. Henman,* 41 F.3d 1100, 1102 (7th Cir.1994) (citation omitted). I would expect that where, as here, a plaintiff actually submits affidavits and exhibits, no prejudice would lie, a most reasonable result entirely consistent with the purpose of *Hudson.*

For all these reasons, I hardly would be opposed to revisiting the rule of *Klingele* en banc. For now, however, *Klingele* mandates the result in this case, and I perforce concur.